UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | No. 3:11-cr-00138 |
| | ) | |
| **OCTAVIOUS JACKSON** | ) | |

**MEMORANDUM OPINION AND ORDER**

Octavious Jackson, an inmate at the Gilmer Federal Correctional Institution in Glenview, West Virginia, has filed a Motion for Compassionate under 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 70). He argues "extraordinary and compelling reasons" exist for his immediate release (with a period of home confinement) because "he has a severe risk of harm from COVID-19 due to pre-existing medical conditions[.]" (Id. at 1). The Government opposes the motion. (Doc. No. 74). Having fully considered the record, Jackson's request for compassionate release will be denied.

**I.**

Relief under Section 3582(c)(1)(A) may be warranted in cases where a prisoner, who has exhausted administrative remedies, files a motion and the court finds that a sentence reduction is warranted based on (1) an "extraordinary and compelling' reason"; and (2) "any applicable § 3553(a) factors[.]" United States v. Jones, 980 F.3d 1098, 1107–08 (6th Cir. 2020). "[T]he compassionate release decision is discretionary, not mandatory." Id. at 1106. In exercising that discretion, the Court must address both factors when granting relief, but need not do so if one of those factors indicates that relief is not warranted. United States v. Elias, 984 F.3d 516, 519 (6th Cir. 2021); United States v. Ruffin, 978 F.3d 1000, 1006 (6th Cir. 2020). Jackson's request is subject to denial because he has failed to establish either factor.

**A.**

Jackson claims that "[s]ince being in federal prison [he] has been assessed with the following medical conditions: Disorder of arteries and arterioles, Hyperlipidemia, Mononeuropathy of lower limb, and Prediabetes." (Doc. No. 70 at 3-4). Jackson also claims that he was previously ordered to have a sleep study done in the BOP due to symptoms of sleep apnea, but the study has been delayed because of COVID-19. Finally, Jackson is obese – he is 5'7" and weighs 204 pounds, meaning that he has a Body Mass Index (BMI) of 31.9.

On March 29, 2021, the Centers for Disease Control ("CDC") updated and expanded its list of medical conditions that place individuals most at risk for severe illness or death were he or she to contract the presents strains of the coronavirus. Under these new guidelines, being "[o]verweight (defined as a body mass index (BMI) > 25 kg/m2 but < 30 kg/m2), obesity (BMI =30 kg/m2 but < 40 kg/m2), or severe obesity (BMI of =40 kg/m2), **can make [one] more likely** to get severely ill from COVID-19." www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions (emphasis in original) (all websites last visited on 5/1/2021). Accordingly, Jackson's moderate obesity may increase his risk of severe illness from COVID-19. Although not specifically recognized as such by the CDC, one or more of his other medical conditions may place him at increased risk as well.

This does not mean, however, that Jackson has shown an "extraordinary and compelling reason" for release. To the contrary, Jackson is fully vaccinated against COVID-19. He received his first Pfizer-BioNTech shot on March 2, 2021, and his second on March 23, 2021.

The Pfizer vaccine is believed to be 95% effective in preventing COVID-19, and "[i]n clinical trial the vaccine was 100% effective in preventing severe disease" from the virus. www.yalemedicine.org/news/covid-19-vaccine-comparison. For that reasons, virtually every district

court[1] considering the issue, has determined that being fully vaccinated by the Pfizer shots (or the comparably effective Moderna shots) precludes a finding of an "extraordinary and compelling" reason within the meaning of Section 3582(c)(1)(A). This includes federal trial courts within this circuit. See e.g. United States v. Cook, No. 11-20129, 2021 WL 1589261, at *2 (E.D. Mich. Apr. 23, 2021) ("The court is aware of no scientifically derived evidence showing that there is a material risk of severe complications or death from COVID-19 to fully vaccinated individuals. The remote possibility that Defendant could contract COVID-19 and develop life-threatening symptoms does not warrant the extraordinary remedy of compassionate release."); United States v. Collier, No. 2:15-CR-20774-1, 2021 WL 1560079, at *2 (E.D. Mich. Apr. 21, 2021) (collecting cases for the proposition that "courts in the Eastern District of Michigan routinely refuse to find that a fully vaccinated prisoner has an extraordinary and compelling reason for release because of their fear of contracting COVID-19"); United States v. Groom, No. 2:17-CR-159, 2021 WL 1220225, at *2 (S.D. Ohio Apr. 1, 2021) (stating that "Defendant is not at high risk of contracting severe COVID-19 because Defendant will have received both doses of the Pfizer vaccine by the time he would be released," and observing that, even though "[o]ver forty million individuals have been fully vaccinated in the United States, . . . the court does not know of a single confirmed death of a fully-vaccinated individual from COVID-19").

In reaching this conclusion, the Court has considered Jackson's assertion that he has been awaiting a sleep study for some time because of COVID-19 restrictions in the BOP, and his argument that "[i]f COVID-19 is still an obstacle for testing and potential treatment for possible sleep apnea, then compassionate release so that he can seek his own treatment is the most humane

---

[1] It appears that this issue has not yet been considered by an appellate court.

solution." (Doc. 78 at 3). However, Jackson's proposed release plan would place him in an Oxford House sober-living center and, therefore, a sleep test would likely be delayed for quite some time. Moreover, at Gilmer FCI, where Jackson presently resides, 134 staff members and 907 inmates have now been fully inoculated. https://www.bop.gov/coronavirus. This significantly reduces the possibility of a widespread outbreak because more than half (60.9%) of the 1,487 inmates have been vaccinated. Additionally, Gilmer FCI resumed allowing "social visiting on April 16, 2021," www.bop.gov/locations/institutions/gil/gil_tvp_2104.pdf, suggesting that the facility is returning to some sort of normalcy, which will hopefully allow for a sleep study in the not-too-distant future.

**B.**

The applicable 18 U.S.C. § 3553(a) factors do not favor early release, either. After an investigation into the drug trafficking activities of the Vice Lords street gang (of which he was a ranking member), Jackson was charge by way of Information with conspiring to possess and distribute over 280 grams of crack cocaine, two counts of distributing crack cocaine, and one count of distributing cocaine. Thereafter, on September 8, 2011, the Government filed an Information pursuant to 21 U.S.C. § 851, alleging that Jackson had previously been convicted of a felony drug offense. The following day, Jackson pled guilty to all four counts pursuant to a plea agreement.

The advisory Guidelines recommended a sentencing range of 292 to 365 months, based upon a total offense level of 35 and a criminal history category VI. (Presentence Report at 28). The total offense level was driven largely by the amount of drugs involved: 280 grams of crack cocaine; 125.5 grams of cocaine; 28 Xanax pills; and 8.9 grams of marijuana. (Id. ¶ 29). Additionally, at the time of his arrest, Jackson was in possession of two firearms and drugs, resulting in a two-point enhancement. (Id. ¶ 30).

4

Jackson's criminal history points were largely the result of his prior drug possession and trafficking dating back to 1996. This included the sale of less than one-half gram of cocaine in 1996; two convictions for possession of a Schedule II controlled substance in 1999; evading arrest in 2002; resisting arrest and being in simple possession of a controlled substance in 2004; attempted resisting arrest and simple assault in 2005; and simple possession of marijuana in 2009. (Id. ¶ 41, 45, 48, 50, 51, 53). Those convictions also qualified Jackson as a career offender. (Id. ¶ 54).

Notwithstanding the amount of drugs underlying the instant offenses, Jackson's criminal history, his career offender status, and the advisory Guidelines range, Jackson was sentenced on May 19, 2014 to a total term of ten years imprisonment, which was the statutory mandatory minimum for conspiring to possess and distribute over 280 grams of crack cocaine. The sentence was in accordance with a signed plea agreement, even though the Section 851 enhancement filed by the Government would have doubled the statutory mandatory minimum to 20 years.

Jackson did not begin serving his federal sentence until October 13, 2016 because of an outstanding state sentence (Doc. No. 70 at 2), and has a projected release date of March 7, 2025 (Doc. No. 74 at 3), meaning that his has served a little over half of his federal sentence. Given the significant reduction in sentence that Jackson received as a result of his plea agreement (half of what it would be with the Section 851 enhancement), almost halving that sentence once again would not promote respect for the law. Nor would such a reduction serve as an adequate deterrence to Jackson, or to others.

## II.

Because Jackson has not shown "extraordinary and compelling" reasons for his release, and because the Section 3553(a) factors do not warrant it either, Jackson's Motion for Compassionate

5

Case 3:11-cr-00138   Document 82   Filed 04/30/21   Page 5 of 6 PageID #: 575

Release under 18 U.S.C. § 3582 (Doc. No. 70) is **DENIED**.

    IT IS SO ORDERED.

                                                    _____
                                                    WAVERLY D. CRENSHAW, JR.
                                                  CHIEF UNITED STATES DISTRICT JUDGE